UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VI TRAN,

                  Plaintiff,

v.                                    1:15-CV-0559
                                    (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.
_____

APPEARANCES:                          OF COUNSEL:

EMPIRE JUSTICE CENTER            LOUISE M.TARANTINO, ESQ.
  Counsel for Plaintiff
119 Washington Ave.
Albany, NY 12210

U.S. SOCIAL SECURITY ADMIN.       KATHRYN S. POLLACK, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## <u>REPORT and RECOMMENDATION</u>

      This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 23.)  This case has proceeded in accordance with General

Order 18.

      Currently before the Court, in this Social Security action filed by Vi Tran

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 15, 22.)  For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born on July 25, 1962.  (T. 104.)  She completed the second grade. (T. 122.)  Generally, Plaintiff's alleged disability consists of asthma, migraines, memory loss, depression, high cholesterol, and "heart problems."  (T. 121.)  Her alleged disability onset date is December 1, 1995. (T. 58.)

### B.    Procedural History

On March 30, 2012, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  (T. 58.)  Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On September 18, 2013, Plaintiff appeared before the ALJ, Carl E. Stephan.  (T. 37-51.)  On January 13, 2014, ALJ Stephan issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 7-24.)  On April 6, 2012, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 12-19.)  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 30, 2012.  (T. 12.)  Second, the ALJ found that

Plaintiff had the severe impairments of migraine headaches, hypertension, tachycardia, asthma, depression, and anxiety disorder. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 12-14.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work[1]; however, she should not be exposed to respiratory irritants, she was capable of performing simple, rote work, making simple work-related decisions, and occasionally interacting with others, except she should have no contact with the public. (T. 14.) Fifth, the ALJ determined that Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 18.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes three separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to properly formulate Plaintiff's RFC because the ALJ 1) erred in his evaluation of Plaintiff's treating source and 2) erred in considering evidence from the single decision maker. (Dkt. No. 15 at 12-19 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ erred in his step five determination because 1) the ALJ's hypothetical question was incomplete and 2) Plaintiff could not perform the jobs identified by the vocational expert ("VE"). (*Id.* at 19-23.) Third, and lastly, Plaintiff argues the ALJ failed to provide a full and fair hearing

---

[1]    Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work. 20 C.F.R. § 416.967(c).

because 1) the hearing translator had a conflict of interest and 2) the ALJ failed to obtain Plaintiff's prior disability determination and file. (*Id.* at 23-25.)

**B.      Defendant's Arguments**

In response, Defendant makes four arguments. First, Defendant argues the ALJ properly considered Plaintiff's RFC. (Dkt. No. 22 at 5-10 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ properly determined that Plaintiff could perform jobs existing in significant numbers in the national economy. (*Id.* at 11-13.) Third, Defendant argues the ALJ provided Plaintiff with a full and fair hearing and additional record development was not required. (*Id.* at 13-14.) Fourth, and lastly, Defendant argues an award for benefits is not warranted. (*Id.* at 14.)

**III.    RELEVANT LEGAL STANDARD**

**A.      Standard of Review**

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation

process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The

five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of
> impairments; (3) whether the impairment meets or equals the severity of
> the specified impairments in the Listing of Impairments; (4) based on a
> 'residual functional capacity' assessment, whether the claimant can
> perform any of his or her past relevant work despite the impairment; and
> (5) whether there are significant numbers of jobs in the national economy
> that the claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.    ANALYSIS

### A.    The ALJ's RFC Determination

Plaintiff's RFC is the most she can do despite her limitations.  20 C.F.R. §

416.945.  The RFC is based on all the relevant medical and other evidence of record,

and takes into consideration the limiting effects of all of Plaintiff's impairments.  *Id.*  The

relevant factors considered in determining what weight to afford an opinion include the

length, nature and extent of the treatment relationship, relevant evidence which

supports the opinion, the consistency of the opinion with the record as a whole, and the

specialization (if any) of the opinion's source.  20 C.F.R. § 416.927(c)(1)-(6).

### i.)    Treating Source, KrisEmily McCrory, M.D.

The opinion of a treating source will be given controlling weight if it "is well

supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §

416.927(c)(2); *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

The following factors must be considered by the ALJ when deciding how much

weight the opinion should receive, even if the treating source is not given controlling

weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 416.927(c)(2)(i)-(iv). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Moreover, the "ultimate finding of whether a claimant is disabled and cannot work [is] 'reserved to the Commissioner.'" *Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir.1999); *see* 20 C.F.R. § 416.927(e)(1). "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions." *Snell,* 177 F.3d at 133. Thus, a treating physician's disability assessment is not determinative. *Id.* Where the evidence of record includes medical source opinions that are inconsistent with other evidence or are internally inconsistent, the ALJ must weigh all of the evidence and make a disability determination based on the totality of that evidence. *See* 20 C.F.R. § 416.927(d).

Plaintiff received her primary care from Dr. McCrory. Dr. McCrory completed two medical source statements on behalf of Plaintiff. (T. 375-387, 607-611.) In May of 2012, Dr. McCrory completed a medical source statement at the request of the New York State Office of Temporary and Disability Assistance. (T. 375-387.) Therein, Dr. McCrory indicated that she treated Plaintiff for depression. (T. 375.) Dr. McCrory listed no other treating diagnoses or history of diagnoses besides depression. (*Id.*) Dr. McCrory indicated that Plaintiff was taking medication to treat her depression and

"appear[ed] to function" with medication. (T. 376.) Dr. McCrory completed the mental status portion of the form, in which she indicated Plaintiff's attitude, appearance and behavior were appropriate and Plaintiff was well groomed; Plaintiff had a flat-affect; and Plaintiff's attention/concentration, orientation, memory, information, insight and judgment were appropriate. (T. 382-382.) Dr. McCrory noted Plaintiff had no difficulties with her activities of daily living. (T. 383.) Dr. McCrory indicated that Plaintiff had no limitations in her ability to do work related physical activities. (T. 384-385.) Dr. McCrory indicated that Plaintiff had no limitations in her ability to do work related mental activities. (T. 385-386.)

In January of 2013 Dr. McCrory completed another medical source statement form. (T. 607-611.) She indicated that Plaintiff had a diagnosis of migraine headaches and a medical history of migraines, anxiety, depression, and hyperlipidemia. (T. 607.) In terms of functional limitations, Dr. McCrory essentially opined that Plaintiff had no limitations in her ability to sit, stand, or walk in an eight hour workday. (T. 608.) However, Dr. McCrory opined Plaintiff would need a job that permitted shifting positions at will and she would need to take unscheduled breaks lasting two to three hours, depending on her headache, during which she would need to lie down or sit quietly. (*Id.*) Dr. McCrory opined Plaintiff could occasionally lift up to ten pounds and could never lift more than eleven pounds. (T. 609.) She opined Plaintiff had no manipulative limitations. (*Id.*) She indicated Plaintiff would be absent about four days per month due to her impairment or treatment. (*Id.*)

Dr. McCrory provided additional non-exertional limitations in her January 2013 statement. Dr. McCrory checked "never" after the heading of "postural limitations

(climbing, balancing, stopping, kneeling, crouching, crawling)." (T. 610.)[2] She opined

that Plaintiff had no manipulative limitations. (*Id.*) She stated Plaintiff had no side

effects from her medication. (*Id.*) Dr. McCory indicated that Plaintiff did not have

breathing issues and had no environmental limitations. (T. 611.) Dr. McCory stated

that Plaintiff's migraines were primarily managed by her neurologist. (*Id.*)

The record indicated that Plaintiff received treatment and medication for her

migraines from providers as Albany Medical Center ("AMC") Neurology, primarily

Charles E. Argoff, M.D.[3] Although the record contains numerous treatment notations

from Dr. Argoff, and other providers at AMC Neurology, the record does not contain a

medical source statement from this group. A longitudinal reading of the record indicates

that Plaintiff's migraines responded poorly to treatment until she began a course of

botulinum toxin ("Botox") injections at which point her migraines reduced in frequency

and severity.

Plaintiff initially reported having one to four headaches a week. (T. 238, 547,

553, 558.) Notations from August 20, 2008, indicated Plaintiff could not tolerate her

---

[2]    The ALJ, Plaintiff's counsel, and Defendant read the form as Plaintiff intended. In other words, that Dr. McCory opined Plaintiff should "never" perform "postural" activities. Presumably because each party is familiar with Social Security Administration's use of the terms. However, the terminology, layout of the form, and lack of definitions could be confusing to someone who is not familiar with Social Security terminology, such as Dr. McCrory. The heading in question read "Postural Limitations (please check)." (T. 610.) The options provided were "Frequently," "Occasionally," and "Never." (*Id.*) The terms frequently, occasionally, and never were not defined nor was their relationship to "Postural Limitations" made clear. This court could reasonably assume that Dr. McCrory read the statement as Plaintiff 'never' had 'postural limitations' as opposed to Plaintiff should 'never' perform 'postural activities.' This interpretation of the form is supported by Dr. McCrory's opinion that Plaintiff had no limitations in her ability to sit, stand, or walk. (T. 609.) Also, the section proceeding "Postural Limitations" was titled "Manipulative Limitations" with the option of either "Limited" or "Unlimited." (T. 610.) Dr. McCrory indicated Plaintiff's manipulative limitations were "unlimited." The section terminology was presented as either limited or not, therefore, it goes to reason that the previous section could also be read as asking the doctor to opine as to whether the plaintiff was limited or not.

[3]    The record contained treatment notations from 2004 through 2013. (T. 234-240, 251-300, 414-455, 505-565, 692-697, 72-721.)

migraine medication, but continued with Imitrex for headaches. (T. 238.) At that time, Plaintiff reported three to four headaches a week. (*Id.*) In a letter dated November 19, 2008, a provider with AMC Neurology stated that Plaintiff's migraines had not responded to a variety of treatment attempts. (T. 237.)

In February of 2009 Plaintiff started a trial of Botox injections with Dr. Argoff. (T. 440.) Dr. Argoff noted on May 18, 2009, that Plaintiff had a "tremendously positive response" to the first injection and Plaintiff had "much better control of her headaches since her initial . . . treatment." (T. 438.) On August 17, 2009, Dr. Argoff noted Plaintiff had a "significantly positive response to [Botox] treatment." (T. 436.) He further noted that Plaintiff had "no pain whatsoever." (*Id.*) On November 9, 2009, Dr. Argofff again noted Plaintiff's migraines had "significantly improved" with treatment. (T. 434.) Notations indicated that Plaintiff stated Botox treatments "changed her life." (*Id.*) Notations on February 8, 2010, again noted significant improvement with treatment. (T. 432.) On May 17, 2010, Dr. Argoff noted Plaintiff was "much improved." (T. 430.) On November 5, 2010, Plaintiff informed Dr. Argoff she was "very pleased" with the results of Botox therapy and was in zero pain. (T. 426.)

On February 3, 2011, Dr. Argoff noted Plaintiff had "done extremely well" and was "thrilled with the result [of Botox therapy]." (T. 424.) Dr. Argoff noted Plaintiff had a "dramatic reduction in her headache frequency and severity." (T. 424.) On July 25, 2011, Dr. Argoff noted Plaintiff's pain level was zero. (T. 420.) On October 17, 2011, Dr. Argoff noted Plaintiff continued to do "very well" with Botox therapy. (T. 418.)

On January 9, 2012, Dr. Argoff noted Plaintiff had "done remarkably well with very few, if any migraine headaches on [Botox therapy] and she would like to continue

with such." (T. 416.) On June 25, 2012, Dr. Argoff again noted Plaintiff was doing "extremely well" on Botox therapy. (T. 414.) On September 17, 2012, Dr. Argoff noted Plaintiff was "doing very well" with Botox and wished to continue with treatment. (T. 505.) Plaintiff reported that she had no pain in her head. (*Id.*) On December 10, 2012, Dr. Argoff noted "from her headache control point of view she is doing very well with Botox. She previously experienced severe and chronic migraine." (T. 696.)

On March 11 and June 17, 2013, Dr. Argoff noted Plaintiff was doing "extremely well" and noted that Plaintiff had "an over [eight] headache per moth reduction in frequency and 50% reduction in severity." (T. 692-694.)

In affording weight to the medical opinions in the record, the ALJ afforded Dr. McCrory's opinions "significant," but not "controlling," weight. (T. 16.) The ALJ determined that although Dr. McCrory's had a treating relationship with Plaintiff, her opinions were not entitled to controlling weight. (*Id.*) For the reasons stated herein, and further outlined in Defendant's brief, the ALJ properly adhered to the Regulations in affording Dr. McCrory's opinion less than controlling weight and substantial evidence supported his weight determination.

First, contrary to Plaintiff's argument, the ALJ provided "good reasons" for providing Dr. McCrory's opinion less than controlling weight. (Dkt. No. 15 at 15-16 [Pl.'s Mem. of Law].) As stated by the ALJ, although Dr. McCrory was Plaintiff's primary care provider, she did not provide Plaintiff with treatment or medication for her migraines; therefore, the ALJ reasonably concluded that Dr. McCrory's opinion as to Plaintiff's limitations based on her migraines was not entitled to controlling weight. (T. 15-17.) Dr. Argoff is a neurologist who provided treatment, medication and counseling for Plaintiff

regarding her migraines.  Clearly, Dr. Argoff is a specialist in the field of neurology and provided Plaintiff with actual care for her migraines, unlike Dr. McCrory.  *See* 20 C.F.R. § 416.927(c)(2)(i).  Therefore, the ALJ did not err in in his determination that Dr. McCrory's 2012 opinion, which was premised on Plaintiff's diagnosis of migraines, was not entitled to controlling weight, because Dr. McCrory, unlike Dr. Argoff, was not a specialist and did not treat Plaintiff for her migraines.

Second, Dr. McCrory's two opinions were inconsistent with each other and inconsistent with the record.  "Consistency" is a factor in deciding the weight accorded to any medical opinion.  20 C.F.R. § 416.927(c)(2).  Dr. McCrory indicated in 2012 that Plaintiff had no mental or physical limitations that would prevent her from performing work-related activities.  (T. 375-387.)  Dr. McCrory indicated in 2013 that Plaintiff's migraines limited her ability to perform physical work-related activities.  (T. 607-611.)[4] As stated by the ALJ, the record did not support Dr. McCrory's 2013 opinion because the record failed to show that any of Plaintiff's conditions worsened.  (T.16.)  In fact, the record reflected that Plaintiff's migraines significantly improved with treatment continuing through 2012 and 2013.

Dr.  McCrory's limitations were further undermined by treating neurologist Dr. Argoff's notations which noted significant improvement with Botox treatment and Plaintiff's own reporting.   As stated by the ALJ, and as outlined herein, Dr. Argoff's notations showed remarkable improvement in Plaintiff's migraines with Botox treatment.

---

[4]        Plaintiff argues that ALJ should have adopted Dr. McCrory's 2013 opinion because it was more detailed than her 2012 opinion.  (Dkt. No. [Pl.'s Mem. of Law].)  However, the 2012 form provided by New York State was just as, if not more detailed, than the 2013 form.  (T. 384.)  Had Dr. McCrory opined in 2012 that Plaintiff's ability to lift and carry was limited, the form directed her to indicate specifically how often Plaintiff could perform those activities and the number of pounds that could be lifted and carried.  (*Id.*)  Therefore, Plaintiff's argument that the 2013 limitations should be adopted because the 2013 form was more detailed fails.

Therefore, the ALJ properly concluded that Dr. McCrory's 2013 functional limitations, which Dr. McCrory indicated were based on Plaintiff's migraines, where inconsistent with treating neurologist Dr. Argoff's notations which indicated Plaintiff was doing significantly better.

Dr. McCrory's 2013 lifting and carrying limitations were also inconsistent with Plaintiff's own reporting. Plaintiff stated in her application for benefits that she could not lift heavy objects due to asthma, not migraines. (T. 143.) Dr. McCrory did not make note of Plaintiff's asthma in her 2012 or 2013 statements and specifically noted in 2013 that Plaintiff had no environmental restrictions. (T. 611.)

Further, Dr. McCrory's lifting and carrying limitations were inconsistent with the objective medical findings in the record. For example, Dr. Agroff performed a physical examination on November 19, 2008, and noted Plaintiff had no musculoskeletal trauma, joint or neck pain, myalgias, cramping, or weakness. (T. 235.) Dr. Agroff performed a neurological examination and noted Plaintiff had normal muscle strength, bulk and tone in upper and lower extremities; normal sensation; normal gait and station; could walk on her heels, toes and tandem without difficulty; her reflexes were normal and symmetric; and her coordination was normal. (*Id.*) On October 15, 2012, Plaintiff sought emergency treatment for low back pain. (T. 622.) A physical examination showed no focal, sensory, or motor deficits, and no tenderness to palpation of her back. (T. 623.) The record contains no other complaints of back pain or any other musculoskeletal pain.

Plaintiff argues that the ALJ ignored Dr. McCrory's opinion that Plaintiff required an occupations that would allow her to shift positions at will. (Dkt. No. 15 at 14 [Pl.'s

Mem. of Law].) To be sure, in his otherwise thorough synopsis of Dr. McCrory's statements, the ALJ did not specifically mention her opinion that Plaintiff required a sit/stand at will option. (T. 16.) Any error was harmless. An ALJ's failure to cite specific evidence does not mean it was no considered. *Barringer v. Comm'r,* 358 F.Supp.2d 67, 78-79 (N.D.N.Y.2005)*; LaRock ex. rel. M.K. v. Astrue,* No. 10–CV–1019, 2011 WL 1882292, *7 (N.D.N.Y. Apr. 29, 2011) (citing *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) ("An ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision."). The ALJ's rationale for not adopting Dr. McCrory's postural limitations was clear from his analysis and decision. (T. 16-17.) This analysis applies to Dr. McCrory's opinion regarding Plaintiff's non-exertional limitations, including a sit/stand opinion.

In sum, the ALJ properly afforded Dr. McCrory's opinion less than controlling weight, including her opinion regarding Plaintiff's non-exertional limitations and other work related limitations. Dr. McCrory based her 2013 limitations on Plaintiff's diagnosis of migraines; however, Dr. McCrory did not treat Plaintiff for her migraines. Dr. Agroff, who provided treatment and medication for Plaintiff's migraines, supplied numerous treatment notations which indicated that with Botox therapy Plaintiff had "done remarkably well with very few, if any migraine headaches" (T. 416) and "from her headache control point of view she is doing very well with Botox. . . [s]he previously experienced severe and chronic migraines." (T. 696). And the objective physical examinations in the record failed to provide any indication that Plaintiff suffered from physical impairments which would cause additional physical work-related restrictions.

### ii.) Single Decision Maker, T. Clark

Plaintiff argues that although the ALJ did not specifically cite to single decision maker Clark, he impermissibly adopted Clark's RFC for medium work. (Dkt. No. 15 at 16-18].) To be sure, courts have concluded that assigning any evidentiary weight to a single decision maker is an error. *Hart v. Astrue*, 32 F. Supp. 3d 227, 237 (N.D.N.Y. 2012). As stated by Defendant, there is absolutely nothing to suggest that the ALJ relied on the single decision maker's report. (Dkt. No. 22 at 10 [Def.'s Mem. of Law].) The ALJ did not cite to, or infer in any way, that he relied on the report in his decision. Therefore, the ALJ did not commit error in relying on the report of a single decision maker where the ALJ did not refer to the report either directly or indirectly.

It is the duty of the ALJ, not a medical source, to formulate a plaintiff's RFC. 20 C.F.R. § 416.945. Although no medical source provided an opinion that Plaintiff could explicitly perform medium work, the ALJ's RFC determination need not correspond precisely with the opinion of one medical source. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."), *see also Zongos v. Colvin*, No. 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion).

The ALJ's RFC determination, that Plaintiff could perform medium work, was supported by the record as a whole. Dr. McCrory opined Plaintiff had no limitations in her ability to sit, stand, or walk. (T. 384, 608.) Physical examinations in the record indicated Plaintiff had full range of motion, full motor strength in extremities, normal gait,

and normal reflexes.  (T. 239, 254-255, 258, 264, 318, 444, 548, 550, 553-554, 555, 563, 564, 574, 579, 696, 703.)  Plaintiff stated that she had difficulty with "heavy" lifting due to her asthma.  (T. 143.)  Plaintiff stated that she could clean her house, do laundry, iron, wash clothes, sweep, dust, fold and put away clothes.  (T. 141.)  Plaintiff indicated that her asthma prevented her from walking "long distances" and climbing stairs, but she had no problems standing or sitting.  (T. 144.)  Plaintiff stated she could walk thirty minutes before needing to rest.  (T. 145.)  The ALJ's RFC was supported by Dr. McCrory's opinions, Dr. Argoff's treatment notations and objective observations, objective physical examination in the record and Plaintiff's statements provided in her application.

## B.    The ALJ's Step Five Determination

At step five in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical–Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid").  *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986).

Plaintiff raises three arguments regarding the ALJ's step five determination. First, Plaintiff argues the hypothetical presented to the VE was erroneous because it did not include all of the limitations imposed by Dr. McCrory.  (Dkt. No. 15 at 20-21 [Pl.'s

Mem. of Law].)  Second, Plaintiff essentially argues that the occupations provided by the VE were inconsistent with Plaintiff's RFC and conflicted with the Dictionary of Occupational Titles ("DOT").  (*Id.* at 21-22.)  Third, Plaintiff argues that two of the occupations provided by the VE were classified as light work and under the Grids Plaintiff would be found disabled given her age, education, work experience and an RFC for light work.  (*Id.* at 22.)

Here, the ALJ determined at step five that Plaintiff had no past relevant work, Plaintiff was "closely approaching advanced age," and was illiterate but able to communicate in English.  (T. 18.)  The ALJ submitted an interrogatory to the VE to testify as to whether jobs existed in the national economy based on the following hypothetical:

> [a]ssume a hypothetical individual who was born on July 25, 2962, and has a very limited ability to communicate in English as defined in 20 CFR [§§] 404.1564 and 416.964, and has no work experience.  Assume further that this individual has the [RFC] to perform work at the medium exertional level.  The individual should not be exposed to respiratory irritants.  Further the individual is capable of performing simple, rote work, has the ability to make simple work-related decisions, and could occasionally interact with other individuals, but should have no contact with the public.

(T. 215.)  The VE was also supplied with exhibits from the case record.  (T. 213.)  In response the VE provided three occupations: cook, fry, deep-fat (DOT 526.685-014), cleaner, housekeeping (DOT 323.687-014), and garment folder (DOT 789.687-066).  (*Id.*)[5]

Plaintiff first argues that the RFC underlying the hypothetical question presented to the VE was flawed because it failed to provide for the limitations imposed by Dr.

---

[5]     Plaintiff filed a response to the VE's interrogatories.  (T. 220-221.)  Therein, Plaintiff asserts, as she does in her brief, that Plaintiff was unable to perform medium work.  (*Id.*)  Plaintiff further argues that the occupations provided by the VE did not properly account for Plaintiff's ability to communicate.  (T. 221.)

McCrory; and therefore, the VE testimony could not provide substantial evidence. (Dkt. No. 15 at 19-20 [Pl.'s Mem. of Law].) As outlined herein, the ALJ's RFC assessment that Plaintiff could perform medium with additional non-exertional limitations was supported by substantial evidence; therefore, the ALJ did not err in posing a hypothetical question to the VE that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record). Therefore, Plaintiff's argument, that the ALJ's hypothetical to the VE was flawed because it did not include all of Dr. McCrory's limitations, fails. (Dkt. No. 15 at 20 [Pl.'s Mem. of Law].)

Plaintiff next argues that she was unable to perform the occupations provided by the VE due to her inability to read English and her "very limited ability to communicate in English," her limited ability to perform math, and her inability to be exposed to respiratory irritants. (Dkt. No. 15 at 21-23 [Pl.'s Mem. of Law].)

At step five, a Plaintiff's RFC is one factor considered in the evaluation process. The ALJ must also take into consideration Plaintiff's age, education and work experience. 20 C.F.R. § 416.920(a)(5). Regarding education, the Regulations define illiteracy to mean "the inability to read or write." *Id.* at 416.964(b)(1). The term "illiteracy" as used in the regulations "means illiteracy in English, not illiteracy in all languages"; whether an individual is literate in another language is irrelevant to her ability to find work in this country. *See Zayas v. Heckler,* 577 F.Supp. 121, 127 (S.D.N.Y.1983). The Regulations also consider an "inability to communicate in English" an educational factor and the ability encompasses speaking, reading, and understanding English. 20 C.F.R. § 416.964(b)(5).

Plaintiff argues she is unable to perform work as a cook (DOT 526.685-014) because under the DOT the occupation of cook requires Level 2 Reasoning[6] which requires the ability to apply common sense understanding to carry out detailed but uninvolved written or oral instructions.  (Dkt. No. 15 at 21 [Pl.'s Mem. of Law].)  Plaintiff argues she is also unable to perform the occupation of cook because it requires a Level 1 Language Development[7] and Math Level of 1[8], which are beyond Plaintiff's capabilities due to her limited education and limited ability to communicate in English. (*Id.* at 21.)  Lastly, Plaintiff argues that she could not perform the occupation of cook because it would expose her to respiratory irritants and her dry eye syndrome would prevent her from meeting the visual requirements of the occupation.  (*Id.* at 21.)

Although Plaintiff may argue that she is unable to perform the occupations provided by the VE, it is the job of the VE to identify which of the jobs contained in the DOT fall within the subset of jobs available given Plaintiff's age, education, work experience, and RFC.  *See McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014).  The question posed to the VE included Plaintiff's "very limited ability to communicate in English" as defined in 20 C.F.R. § 416.964.  (T. 215.)  SSR 00-4p states that "[t]he DOT

---

[6]     "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations."  Appendix C - Component of the Definition Trailer, 1991 WL 688702.

[7]     "Reading: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.  Writing: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.  Speaking: Speak simple sentences, using normal word order, and present and past tenses." Appendix C - Component of the Definition Trailer, 1991 WL 688702.

[8]     "Add and subtract two-digit numbers. Multiply and divide 10's and 100's by 2, 3, 4, 5. Perform the four basic arithmetic operations with coins as part of a dollar. Perform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound."  Appendix C - Component of the Definition Trailer, 1991 WL 688702.

lists the maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." SSR 00-4P (S.S.A. Dec. 4, 2000); *Priel v. Astrue*, 08-CV-0213, 2010 WL 184329, at *4 (W.D.N.Y. Jan. 15, 2010) (because the positions identified by the VE "state maximum literacy requirements, does not mean that such literacy requirements are essential and requisite in every job under the category"). Therefore, the reading and math levels presented in the DOT are the maximum required of those occupations as generally performed, and the VE testified that despite Plaintiff's limited ability to communicate in English there were still occupations that she could perform. The VE indicated that her testimony was not inconsistent with the DOT. (T. 216.) Therefore, the ALJ did not err in relying on the occupations presented by the VE based on his RFC and given Plaintiff's "very limited ability to communicate in English."

Plaintiff's arguments that she could not perform the occupations provided by the VE due to respiratory irritants and dry eyes are without merit. (Dkt. No. 15 at 21 [Pl.'s Mem. of Law].)[9] The ALJ's hypothetical included Plaintiff's environmental limitations and the VE testified Plaintiff could perform the occupation of cook despite those limitations. (T. 215-216.) Regarding Plaintiff's alleged limitations due to dry eye, the ALJ determined at step two that Plaintiff's eye condition was not a severe impairment. (T. 12.)[10] As stated by the ALJ, the record indicated that Plaintiff's vision was 20/25 corrected and she was not experiencing any visual disturbance. (T. 499-504.) Therefore, the ALJ did not err in presenting a hypothetical to the VE which did not

---

[9] Plaintiff's brief refers to Plaintiff as "Ms. Gokey;" however, this appears to be a typo as Plaintiff is named Vi Tran. (Dkt. No. 15 at 21 [Pl.'s Mem. of Law].)

[10] Plaintiff does not question the ALJ's step two finding.

account for visual limitations, because Plaintiff did not have a visual impairment which caused more than a minimal limitation in her ability to perform work-related activity. Plaintiff's argument that Plaintiff could not perform the occupation of cook due to respiratory irritants is without merit. According to the DOT, the occupation of fry cook does not require exposure to atmospheric conditions such as dust, fumes, and gases (DOT 526.685-014) and the VE testified that Plaintiff could perform the occupation of cook with her respiratory limitations.

Plaintiff argues that the ALJ erred in relying on VE testimony that Plaintiff could perform occupations classified as light work when the Grids would direct a finding of disability if Plaintiff had the RFC to perform light work. (Dkt. No. 15 at 22 [Pl.'s Mem. of Law].) To be sure, the Grids would direct a finding of disabled for a person with Plaintiff's age, education, previous work experience, and an RFC for light work (with no additional non-exertional limitations). Part 404, Subpart P, App. 2, § 202.09. However, the ALJ found Plaintiff could perform medium work, therefore, the Grids for light work are not applicable to Plaintiff.

Therefore, for the reasons stated herein, and further outlined in Defendant's brief, the ALJ's step five determination was supported by substantial evidence and remand is not recommended.

### C.    Full and Fair Hearing

Plaintiff, whose first language is Vietnamese, asserts that she did not receive a full and fair hearing because the interpreter at her hearing was acquainted with her husband. (Dkt. No. 15 at 23-24 [Pl.'s Mem. of Law].) Plaintiff first raised this issue to the AC. (*Id.*)

Under the Social Security Administration's Program Operations Manual System ("POMS"), the Administration is to provide a qualified interpreter free of charge to any plaintiff with limited English proficiency. *See* POMS Section DI 23040.001 (Sep. 27, 2012). A qualified interpreter must "[p]rovide [ ] an accurate interpretation of questions and responses by both the individual being interviewed and the DDS staff member." *Id*. A violation of the interpreter policy can result in the denial of a full and fair hearing. *See, e.g., Alvarez v. Comm'r of the Soc. Sec. Admin.,* 10-CV-890, 2011 WL 2600712, at *3 (D.N.J. June 28, 2011); *DiPaolo v. Barnhart,* 01-CV-3123, 2002 WL 257676, at *8–10 (E.D.N.Y. Feb. 8, 2002).

Plaintiff alleges that she did not testify fully about her conditions; however, Plaintiff did not identify a "specific point" that she was unable to present. *See Tankisi v. Comm'r of Soc. Sec.,* 521 F. App'x 29, 31–32 (2d Cir. 2013). As stated in *Tankisi*:

> Although Tankisi asserts that difficulties with the translation prevented her from fully stating her position, she has not identified a specific point that she was unable to present or understand at the hearing. Indeed, at the close of the hearing, the ALJ gave Tankisi's counsel an opportunity to ask further questions, and thus ensure that the entirety of Tankisi's position was on the record. As a result, the arrangement with the interpreter and his services did not result in a denial of a full and fair hearing.

*Tankisi,* 521 F. App'x 29 at 31-32. Plaintiff here, as with the plaintiff in *Tankisi*, did not identify a specific point she was unable to present and Plaintiff was represented by counsel who was given the opportunity to ask further questions.

Plaintiff has failed to show how she was disadvantaged by having an interpreter who was an acquaintance of her husband, other than to allege she was not fully forthcoming regarding her symptoms. (Dkt. No. 15 at 23 [Pl.'s Mem. of Law].) A review of the record indicated that Plaintiff's testimony in her written application, to her

providers, and at the hearing was consistent.  Plaintiff was represented at the hearing

by counsel who was familiar with her case file, medical conditions and limitations.  If

Plaintiff's testimony at the hearing was not completely forthcoming due her distrust of

the interpreter, Plaintiff's counsel was given an opportunity to examine Plaintiff to elicit

proper testimony.  *Martinez v. Astrue*, 07-CV-0699, 2009 WL 840661, at *3 (D. Conn.

Mar. 30, 2009) ("If there were difficulties or errors of interpretation, Martinez's attorney

had ample opportunity to question her and could have clarified any inadequate or

inaccurate responses.").

　　　In addition, Plaintiff argues that under HALLEX I-2-6-10D[11] the ALJ "must

postpone the hearing" if Plaintiff objects to an interpreter.  (Dkt. No. 15 at 23 [Pl.'s Mem.

of Law].)  First, HALLEX I-2-6-10D states that if a plaintiff objects to an interpretation,

not the interpreter, the ALJ must determine whether the plaintiff is receiving a full and

fair hearing.  Second, a postponement of the hearing is not automatic upon plaintiff's

objection.  The HALLEX states that the ALJ will note the objection on the record,

proceed with the hearing, and address the objection in the decision or if the ALJ

concludes that the plaintiff is not receiving a full and fair hearing, the ALJ will adjourn or

postpone the hearing.  HALLEX I-2-6-10D.  Plaintiff asserts that the interpreter had a

conflict of interest, but there is no indication that the interpreter would somehow benefit

from the outcome of the case or that the interpreter was more than a casual

---

[11]　　　Certain manuals, including HALLEX, are not regulations and therefore are not binding on the Social Security Administration.  *Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) ("the Claims Manual is not a regulation[,] has no legal force, and it does not bind the SSA.").  However, traditional notions of due process would suggest that without an interpreter a claimant unable to communicate in English would hardly receive a "full hearing ... in accordance with the beneficient purposes of the Act."  *Echevarria v. Secretary of Health and Human Services,* 685 F.2d 751, 755 (2d Cir.1982).

acquaintance of Plaintiff's husband.[12]  Therefore, Plaintiff has failed to show that she did not receive a full and fair hearing.

### D.    Development of the Record

Plaintiff argues the ALJ failed to develop the record by not obtaining the file associated with Plaintiff's prior case in which she received SSI benefits from 1998-2011. (Dkt. No. 15 at 24-25 [Pl.'s Mem. of Law].)  To be sure, an ALJ has a duty to develop the record and the Second Circuit has held that an ALJ did not adequately develop the record when he failed to question a *pro se* plaintiff about his prior receipt of disability benefits. *Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984).  Defendant counters that the ALJ was not required to obtain Plaintiff's previous application and file, which was filed more than ten years prior to Plaintiff's current application.  (Dkt. No. 22 at 14 [Def.'s Mem. of Law].)  Defendant relies on another Second Circuit case which held that an ALJ was not required to obtain a plaintiff's ten year old prior file based on generalized relevance. *DeChirico v. Callahan*, 134 F.3d 117, 1184 (2d Cir. 1998).

Here, as in *DeChirico*, Plaintiff was represented by counsel at the hearing and Plaintiff makes a general claim of relevance.  (Dkt. No. 15 at 24 [Pl.'s Mem. of Law].) Further, although not binding, the HALLEX provides that an ALJ is not required to obtain a plaintiff's prior claim file when, as here, "[a]t least four years have elapsed between the date of the prior notice of initial determination and the date of the new application." HALLEX, I-2-1-10(D)(3).  Plaintiff's prior case was approved in 1998, fourteen years prior to Plaintiff's current application.  Therefore, for the reasons stated herein and

---

[12]        Plaintiff indicated her husband saw the interpreter "on the street" and spoke to her "at the grocery store."  (T. 33.)

further outlined in Defendant's brief, the ALJ did not commit error in failing to obtain and consider the 1998 application folder and remand is not recommended.

### E.    Remand for Benefits

Lastly, Plaintiff seeks reversal of the ALJ's decision and requests remand for calculation of benefits.  (Dkt. No. 15 at 25 [Pl.'s Mem. of Law].)  Because remand is not recommended, remand for calculation of benefits is not recommended.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED**.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:      August 25, 2016

_____
William B. Mitchell Carter
U.S. Magistrate Judge